The court will proceed to the fourth case, Putro v. Lynch. Mr. Putro, would you like a brief recitation of the facts or should we go right into the facts? Ms. Putro was married. She entered this country legally and she was shortly thereafter married to an American citizen. Unfortunately, this gentleman died before she was able to remove her conditional status of her permanent residency. He died of a heroin overdose. Subsequently, Ms. Putro applied for the waiver, as she's entitled to by law, and there were two subsequent requests for evidence, which she answered in full. After answering those requests, she received a notice to appear alleging certain allegations, but the main one that brought her into removal proceedings was not a dearth of evidence, but rather it was a claim of a sham marriage. So we proceeded to trial before Judge Vinegar, and it was a long hearing for an immigration hearing. Eight witnesses came forward for Ms. Putro, including the decedent's parents, testifying as to the bona fide marriage. There were fewer irregularities that came into this process, and some of these the court has spoken to before, but perhaps needs to speak to again. One of them, there was an out-of-court declarant in this case, who had given some information to the police, who in turn had given it to the immigration authorities, and this out-of-court declarant was never produced. He too, according to the Round Lake Police Department, was a drug addict and a criminal. When it came time to produce this person, Judge Vinegar put the onus of that on Ms. Putro, rather than asking the government to produce their witness, who had not provided an affidavit, no written statement, nothing. So we attempted to do that, and failed in the attempt to find this individual. Was this Sanford? Is that his name? Sorry? Who's this witness? Jeffrey Armstrong was the out-of-court declarant. Armstrong? Armstrong, yes, sir. And this is the one that they couldn't find? Well, no attempt was made by the government to find him or to produce him. The job of that was put on Ms. Putro, even though this was the person who reported to the police. This marriage is fraudulent. Your issue then is the wrong burden.   Ms. Putro was the out-of-court declarant. Ms. Putro was the out-of-court declarant. Ms. Putro was the out-of-court declarant. Well, the burden of proof is Ms. Putro's to prove that by the preponderance of the evidence, which is our next issue, that the marriage was entered into in good faith. But here's my problem. Why did she even need a waiver? Her husband's death occurred during the conditional period exempted from the joint filing requirement. And so it seems to me this case was viewed through a mistaken lens. And the burden was really on the government. I mean, if she didn't – could you address that? Certainly, Your Honor. Thank you. I agree with you. It was a mistaken view in that from the onset it was viewed as a sham marriage. So it was that view. And that's the view that brought us to immigration proceedings, and that's the view that we defended primarily. However, during the course of that trial, we also produced quite a bit of evidence, including eight witnesses testifying as to the legitimacy of the marriage. And, yes, I agree with you. The burden should not have been on Ms. Putro to the extent of producing this particular witness. And it was. And, again, the crux of the notice to appear was a sham marriage. That's what the allegation was. It was not any dearth of evidence or a failure to meet the preponderance of the evidence. Now, the preponderance of the evidence, while this type of thing is discretionary. Let me go back. Let me go back now. Do you agree that she didn't need a waiver because her husband's death during the conditional period did not deter her from the joint filing requirement? I don't agree. She needed a waiver. She needed a waiver to waive his presence because she, of course, could not show that they continued to be married and things like that because he's no longer with us. So, yes, while a waiver was necessary, what brought her to immigration proceedings was not a claim that she failed to meet any evidentiary standard, but rather than it was a sham marriage. And that's what we went forward and defended. Now, I've also asked the court to look at the issue of whether the preponderance of the evidence standard was properly applied. In this case, I would argue. So are you familiar with this matter of Rose case that the board issued, which basically said, which talked about this two-year conditional period and that she could have been excused from the joint filing requirement? No, Your Honor, I'm not familiar with that. Okay. Because it just seems to me it says she doesn't even need to have a waiver. But I wanted your view on it. Well, Your Honor, if that's the case, then we went through a big trial with an immigration judge there based on the sham marriage. And at the end of it, what he said was that Ms. Putro failed to meet the preponderance of the evidence standard. Yeah. No, I understand. And it makes a difference whether or not she needed a waiver because it has to do with the burden of proof. The burden of proof shifts if it is, as the court, as the tax court said in the matter of Rose. I mean, the board said in the matter of Rose. So, okay, you're not familiar with it. That's fine. So as we went forth in this hearing before the immigration judge, we presented all sorts of evidence. Besides all the paper evidence that the immigration service asked for, we had eight witnesses all testifying. None of them were found not to be credible. Now, there was a vague reference to vagueness. However, I think if you look at the record, you'll see that actually all the dates were notable. They gave details as to what occurred, how they met the couple, and things like that. And so to reach this conclusion in light of all of this evidence, one has to wonder and argue whether the law was followed, whether the application of that standard of evidence was followed. And I see I'm into my rebuttal time. All right. Thank you, Mr. Chairman. Thank you. Lisa Moore and Nellie? Good morning. May it please the court. Lisa Moore and Nellie on behalf of the Attorney General. The court should deny in part and dismiss in part this petition for review. First, because petitioner seeks review of an agency decision denying her a discretionary good faith marriage waiver, the court's jurisdiction is limited to colorable constitutional claims and questions of law. To the extent that petitioner's allegations involving the immigration judge's management of proceedings raise legal questions, the court should deny review. The immigration judge properly admitted a police report prepared at the time of her former husband's death, and petitioner had an opportunity to cross-examine the police officer who prepared the report. Can you address this issue of whether or not she really needed to get a waiver? Yes, Your Honor. There has never been a contention before the agency or before this court that she didn't need a waiver. So that has not been raised before this court. So it has always been the position of the government that she did need the waiver and the issue is whether or not she qualified for the waiver. And then are you familiar with that issue, the joint exemption from the joint filing requirement? I understand it wasn't done, but it doesn't mean that we can't review that. And if she didn't even need a waiver, then, you know, so I'd like you to speak to that matter of roads. Or maybe you would want to do some additional briefing because nobody focused on that. Right, yes. That was not addressed in our briefing, but I'd be happy to file a supplemental letter regarding matter of roads. But are you familiar with matter of roads? I am not familiar with it right now. I'm sorry about that. Okay. Because it basically says, and I'm quoting for the board, the death of a petitioning spouse during a two-year conditional period excuses the general requirement that a petition to remove the conditional basis of an alien spouse's status must be joint. Thus, a separate waiver is not required if the surviving spouse timely files an I-751 petition requesting removal of the conditional basis of his status or appears for a personal interview. It seems to me that's like right on the money in this, but we obviously have to check with the presiding judge and the panel to see if they think additional briefing is necessary. But that's really my issue in this case. I understand. And here, before the immigration court and the board, there was no contention that petitioner did not need to qualify or, excuse me, did not need to apply for the waiver because her conditional residence was terminated by USCIS, and she renewed her waiver request before the immigration court. Well, why don't we allow 10 days for both parties to file their view of matter of rows, which is a 2010 decision of the BIA. That sounds good. If I may just address petitioner's argument regarding the preponderance of the evidence standard, I would just like to argue that petitioner's remaining claims regarding the weight given to the evidence is asking the court to reweigh the evidence, which in this situation, this court has recognized that it does not have jurisdiction to do. When we're looking at a waiver request, the determination of what weight to give the evidence is for the immigration court. For example, petitioner asserts that the police report and the testimony should be given, excuse me, the testimony of the detective should be given little weight, but that's for the immigration judge to determine in this type of case. And I would just also like to point out petitioner mentioned that Mr. Zaleski's parents testified to the bona fides of the marriage. But as the immigration judge and the board both pointed out, the deceased parents did not testify whether or not the marriage was a good faith marriage. They testified that they did not know what the status of the marriage was, and also that they did not remember talking to the police officer at the time of their son's death. And so both the immigration judge and the board pointed out the fact that this evidence was not persuasive evidence that it was a good faith marriage at the time it was entered into. Was that mostly because he was, nobody knew where he was or didn't spend time with her? I wonder what is the, it seems obviously he was drug addicted and died of that, right? The parents of Mr. Zaleski did testify that they did not have a close relationship with their son, but that he did stay with them intermittently here and there. He stayed at a number of different locations, but he did stay with them. But yes, they did not have a close relationship with him and were not exactly sure what his situation was. What was the evidence about his relationship with her, his wife? The evidence, as particular to what the parents said, the parents said they just, they didn't know what the relationship was. When they were asked about the marriage, they said they only heard about it after it happened and they could not speak to whether or not it was a good faith marriage or not. What did she say? Petitioner submitted an affidavit stating that it was a good faith marriage that they had entered into and offered some testimony about how they met. And when the immigration judge was looking at all of the evidence, found that it wasn't her testimony and the testimony of her witnesses was not persuasive evidence to prove that the husband and the wife intended to establish a life together at the time that they were married. Is that enough? At the time of their marriage? Yes. What is it? Is it a two-year or three-year condition? When you're looking at the waiver to whether or not, when you're looking at the good faith marriage waiver, that is the standard the immigration court is looking at, is whether or not the parties intended to establish a life together at the time they were married. And they can look at things including how long the couple lived together, how long they lived together after they have their initial interview with the immigration service, and they're looking for evidence to indicate that both parties were committed to establishing a life together at the time the marriage happened. If there are no further questions, the government respectfully requests the petition for review will be denied. Thank you. Thank you. Mr. Reyes? Thank you. Thank you for the 10-day period to amend briefly. Thank you. Your Honor, just to address a few of the matters that counsel brought up, it should be clear that the parents of Michael Zaleski both testified that the marriage was real. They were cross-examined, okay? They went under direct by me, cross-examined by the government. Judge Vinicor asked whatever questions he wanted. Both of them stated on the record at page 326, Carol Zaleski says that the marriage was a real marriage. Robert Zaleski testified that his wife invited his son and Miss Putro to their home on several occasions. That's on the record at 333. As to the intent, clearly the couple intended to have a life together. They underwent an interview, okay, to get their first permanent residence card. They had to go through that gauntlet, and they went through it. In regard to Your Honor's questions about the decedent's sobriety, there were periods of sobriety in the marriage, but certainly, sir, that addiction brought trouble to the marriage as it did to the rest of his life. But there were periods of sobriety during the marriage where he was functioning, going to work, living with his wife, signing leases with his wife, and they were together. So in terms of intent, there was an intent. Unfortunately, tragically, the drug addiction took over, and this young man died from his disease. And my understanding is we will be having then the 10 days? Yeah, each side may have simultaneous. Right, right. We're going to allow both sides 10 days to give their view of the matter of Rose following on Judge Williams' inquiry about your familiarity with the case. Thank you. So that's what the limit is. It's just to get the views of both sides with regard to that case. Thank you very much. All right. Case is taken under advisement.